# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO HUERTA,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS,<br><br>    Respondent. | Case No. 1:15-cv-01827-AWI-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY STAY, PROCEED WITH EXHAUSTED CLAIMS, AND DENY PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

On December 5, 2012, Petitioner was convicted after a jury trial in the Kern County Superior Court of second-degree murder. (1 CT[1] 279). The jury also found true the use of a deadly weapon enhancement. (1 CT 280). The trial court sentenced Petitioner to an aggregate imprisonment term of sixteen years to life. (2 CT 312). On October 23, 2014, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Huerta, No. F066497, 2014 WL 5392951, at *5 (Cal. Ct. App. Oct. 23, 2014). The California Supreme Court denied Petitioner's petition for review on January 14, 2015. (LDs[2] 15, 16).

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on March 25, 2016. (ECF No. 11).
[2] "LD" refers to the documents lodged by Respondent on March 25, 2016 and August 11, 2017. (ECF Nos. 11, 22).

1

On December 7, 2015, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). In the petition, Petitioner raises the following claims for relief: (1) insufficient evidence to establish that his conduct caused the victim's death; (2) the trial court's erroneous restriction of Petitioner's cross-examination of the substitute pathologist; (3) insufficient evidence that Petitioner acted with express or implied malice; and (4) the original pathologist's unavailability for examination at trial, in violation of the Confrontation Clause. Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 10, 12).

## II.

## EXHAUSTION AND REQUEST FOR STAY

In the answer, Respondent asserts that claims 2 and 4 are unexhausted. (ECF No. 10 at 20, 25).[3] In the traverse, Petitioner states that he filed a state habeas petition in the superior court on February 16, 2016 in order to exhaust the two claims. Additionally, Petitioner requests that the Court hold the petition in abeyance pending resolution of the unexhausted claims in state court. (ECF No. 12 at 5). On April 21, 2017, the Court ordered Petitioner to file a brief addressing whether he is entitled to "stay and abeyance" under Rhines v. Weber, 544 U.S. 269 (2005). (ECF No. 15). Petitioner did not submit a brief.

A petitioner in state custody who is proceeding with a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971).

On August 11, 2017, Respondent lodged with the Court state court records that demonstrate Petitioner did not present claims 2 and 4 to the California Supreme Court. (LD 25). It appears that the claims were raised in the Kern County Superior Court and the California Court

---
[3] Page numbers refer to ECF page numbers stamped at the top of the page.

of Appeal, Fifth Appellate District. (LDs 17, 21). However, the exhaustion requirement is not satisfied because Petitioner did not present claims 2 and 4 to the California Supreme Court. As Petitioner has not sought relief in the California Supreme Court, this Court cannot proceed to the merits of those claims. 28 U.S.C. § 2254(b)(1).

Petitioner has requested the Court to hold the petition in abeyance pending resolution of the unexhausted claims in state court. (ECF No. 12 at 5). Under Rhines v. Weber, "stay and abeyance" is available only in "limited circumstances," and only when: (1) there is "good cause" for the failure to exhaust; (2) the unexhausted claims are not "plainly meritless"; and (3) the petitioner did not intentionally engage in dilatory litigation tactics. 544 U.S. at 277–78. Although the Court provided Petitioner with an opportunity to file a brief addressing whether he was entitled to a Rhines stay, Petitioner failed to do so. Accordingly, the undersigned will recommend that Petitioner's request for a stay be denied.

Rhines instructs that "if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." Rhines, 544 U.S. at 278. Accordingly, the undersigned will recommend that Petitioner be allowed to proceed with the exhausted claims, the merits of which are addressed below.

### III.

### STATEMENT OF FACTS[4]

> Appellant rented a bedroom from Velia Alvarez. On April 17, 2011, Alvarez heard the sounds of an argument coming from appellant's room, and heard a woman's voice yelling "[N]o, no, Arturo, please. I moved with my daughter to 2nd Street." Alvarez then heard the sound of glass breaking and items being thrown around the room and called the police.
>
> When police arrived at the scene, they observed appellant pacing inside his room and evidence of blood on the rear door. The officers then entered the residence from the front and rear entrances, and found appellant standing motionless in the kitchen, covered in blood, and the body of Acamea Coy in appellant's bedroom. Coy's arms were tied with a necktie, and a scarf was tied around her face. Inside

---

[4] The Court relies on the California Court of Appeal's October 23, 2014 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

> the room there was broken glass on the floor, a glass Cisco bottle, and blood on all of the walls.
>
> Appellant was subsequently arrested and charged with first degree murder. At trial, the substitute pathologist, Dr. Adel Shaker, testified that he believed the victim's cause of death to be exsanguination due to sharp injuries. Appellant testified in his own defense and stated that he did not intend to kill the victim, but that she had struck appellant with a Cisco bottle, and the two had struggled and rolled in the broken glass. He further testified that during the struggle the victim got up, ran into a wall, and fell.

Huerta, 2014 WL 5392951, at *1.

## IV.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

4

1       As a threshold matter, this Court must "first decide what constitutes 'clearly established
2 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71
3 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this
4 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
5 of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words,
6 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles
7 set forth by the Supreme Court at the time the state court renders its decision." Id. In addition,
8 the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal
9 principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in
10 . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of
11 review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v.
12 Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.
13 Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an
14 end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552
15 U.S. at 126; Moses, 555 F.3d at 760.

16       If the Court determines there is governing clearly established federal law, the Court must
17 then consider whether the state court's decision was "contrary to, or involved an unreasonable
18 application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C.
19 § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the
20 state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question
21 of law or if the state court decides a case differently than [the] Court has on a set of materially
22 indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The
23 word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character
24 or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New
25 International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to
26 [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the
27 governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to"
28 clearly established Supreme Court precedent, the state decision is reviewed under the pre-

AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

## V.

## REVIEW OF EXHAUSTED CLAIMS

In his first and third claims for relief, Petitioner asserts that there was insufficient evidence to support a valid conviction for second-degree murder. (ECF No. 1 at 5, 8). Respondent argues that the state court's denial of Petitioner's sufficiency of evidence claims was reasonable. (ECF No. 10 at 17, 23).

**A. Legal Standard**

The United States Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

///

"'[A]fter AEDPA, we apply the standards of Jackson with an additional layer of deference' to state court findings." Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011) (quoting Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005)). As the Supreme Court has stated,

> Jackson . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

**B. Natural and Probable Consequence**

In his first claim for relief, Petitioner asserts that there was no substantial evidence that his conduct caused the victim's death. (ECF No. 1 at 5). Petitioner raised this sufficiency of evidence claim regarding natural and probable consequence on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 568 U.S. 289, 297 n.1 (2013); Ylst, 501 U.S. at 806.

In denying the sufficiency of evidence claim with respect to natural and probable consequence, the California Court of Appeal stated:

> **A. Standard of Review.**
> We view the record in the light most favorable to the conviction and presume the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.). "Reversal is not warranted unless it appears ' "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457.)

**B. Analysis**
In cases of homicide, criminal liability only attaches if the victim's death is the "natural and probable consequence of a defendant's act [.]" (*People v. Roberts* (1992) 2 Cal.4th 271, 321.) On appeal, appellant asserts that there was insufficient evidence to establish that the victim's death was a natural or probable result of appellant's actions, as appellant struck the victim after she broke a bottle over his head, and appellant could not predict that the victim would then fall on the glass and die from rapid exsanguination.

This argument, however, is based on appellant's version of events and not on a review of the record in the light most favorable to the conviction that presumes the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence. Using the appropriate standard of review, there was evidence presented that appellant and the victim were arguing before the victim's death, that the victim was overheard pleading with appellant, and that a bottle was broken during the argument. The evidence also showed the victim was subsequently found dead from exsanguination in a pile of broken glass, and that her hands had been tied and her eyes blindfolded by appellant. All of this evidence, viewed in the light most favorable to the conviction, is sufficient to establish that the victim's injuries and exsanguination were caused by appellant's actions.

Appellant also argues, however, that causation was not established at trial due to Dr. Shaker's testimony that it was equally compelling that the victim died due to the combination of alcohol and cocaine that was in her bloodstream, as it was that she died from exsanguination. While it is true that Dr. Shaker testified that he could not exclude cocaethylene poisoning as a cause of death with medical certainty, he also testified that he believed the victim's death was caused by exsanguination due to sharp injuries, that he assigned a high probability to that causation theory, and that it was the only cause of death he listed on his report.

Viewing this direct and circumstantial evidence in the light most favorable to the conviction, we find there was substantial evidence to support a finding that the victim's death was a natural or probable result of appellant's actions and to support appellant's conviction for second degree murder.

Huerta, 2014 WL 5392951, at *1–2.

Viewing the record in the light most favorable to the prosecution and presuming that any conflicts were resolved in favor of the prosecution, the Court finds that a rational trier of fact could have found true beyond a reasonable doubt that the victim's death was a natural and probable consequence of Petitioner's actions. Velia Alvarez, who rented a bedroom to Petitioner, testified at trial that she heard noise from Petitioner's bedroom on April 17, 2011, at approximately 9:30 p.m. (3 RT[5] 178, 180, 187). Alvarez heard glass breaking and objects being thrown. (3 RT 190). Alvarez also heard a woman screaming, "[N]o, no, Arturo, please. I moved with my daughter to 2nd Street." (3 RT 187–88). Officer Barthelmes testified that when he

---
[5] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on March 25, 2016. (ECF No. 11).

9

walked into Petitioner's bedroom "[t]here was blood spatter on every single wall of the room" and he saw the body of Acamea Coy. (3 RT 232–33). Barthelmes testified that there was a scarf tied around the victim's face covering her eyes, nose, and mouth and that her arms were tied in front of the body with a necktie. (3 RT 233–34, 236–37). Detective Moore testified that in the bedroom they found the top of a Cisco drink bottle and large pieces of broken glass on the floor. (3 RT 252). Dr. Adel Shaker, the substitute pathologist, could not exclude cocaethylene as a cause of death with medical certainty, but testified that in his opinion the victim's death was caused by exsanguination from sharp force injuries. (4 RT 430–31, 450, 464).

On the other hand, Petitioner testified at trial that the victim took fifty dollars from him, hit him in the face, and hit him with a Cisco wine bottle, which broke. (4 RT 554–57). Petitioner and the victim fought, fell onto the broken glass, and rolled around. (4 RT 559–60). At some point, the victim stood up, hit a wall, and fell. (4 RT 560). After Petitioner was unsuccessful in his attempts to get help, he returned to the room and put a scarf on the victim's head and a tie on her hands. (4 RT 563–65). In light of the verdict, the jury clearly did not find Petitioner to be credible. "[U]nder Jackson, the assessment of credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995). See also Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are . . . entitled to near-total deference under Jackson.").

"When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review," Cavazos, 565 U.S. at 7, the Court finds that the state court's decision denying Petitioner's sufficiency of evidence claim with respect to natural and probable consequence was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

///

///

**C. Malice**

In his third claim for relief, Petitioner asserts that there was no substantial evidence of express or implied malice to support a second-degree murder conviction. (ECF No. 1 at 8). Petitioner raised the sufficiency of evidence claim with respect to malice on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276 (2015); Ylst, 501 U.S. at 806.

In denying the sufficiency of evidence claim with respect to malice, the California Court of Appeal stated:

> "Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) "Such malice may be either express or implied." (Pen.Code, § 188.) "[W]hen it is proved that the defendant assaulted the victim with a deadly weapon in a manner endangering life and resulting in death, ' "malice is implied from such assault in the absence of justifying or mitigating circumstances." ' [Citation.]" (*People v. Lines* (1975) 13 Cal.3d 500, 506.)
>
> Here, appellant argues that there was insufficient evidence to establish malice, as hitting the victim with his hands and struggling with the victim do not constitute an assault with a deadly weapon in a manner endangering life. In the alternative, appellant argues that striking the victim with a bottle is also insufficient to establish implied malice, as fatal exsanguination is not a foreseeable consequence of the infliction of superficial wounds.
>
> With regard to the first claim, appellant again assumes his own version of events rather than viewing the evidence in the light most favorable to the conviction. Given the direct and circumstantial evidence supporting a finding that appellant struck the victim with a bottle, the prosecution was under no obligation to show that unarmed blows constituted an assault with a deadly weapon in a manner endangering life. Regarding the second claim, appellant's assertion that a glass bottle is not a deadly weapon is contradicted by applicable case law. In *People v. Cordero* (1949) 92 Cal.App.2d 196, 199, the First District Court of Appeal found that a glass bottle, when used as a club, is a deadly weapon. Further, Dr. Shaker's testimony established that exsanguination was a possible consequence of superficial wounds, and that the victim in this case did in fact die from such exsanguination.
>
> Therefore, viewing this direct and circumstantial evidence in the light most favorable to the conviction, we find there was substantial evidence to support a

> finding that appellant acted with malice, and to support appellant's conviction for second degree murder.

Huerta, 2014 WL 5392951, at *2–3.

Here, the California Court of Appeal stated that in the absence of justifying or mitigating circumstances, the implied malice element is satisfied when it is proven that the defendant assaulted the victim with a deadly weapon in a manner endangering life and resulting in death. In addition, the California Court of Appeal noted that applicable caselaw has found that a glass bottle, when used as a club, is a deadly weapon. Huerta, 2014 WL 5392951, at *2–3. These determinations are binding on this Court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

As discussed above, there was evidence admitted at trial establishing that a scarf was tied around the victim's face and her arms were tied in the front with a necktie. The top of a Cisco bottle and large pieces of broken glass were found in the room where the victim's body was located. There was blood spatter on every wall. A witness testified hearing glass breaking, objects being thrown, and a woman screaming, "[N]o, no, Arturo, please." A rational trier of fact could conclude that Petitioner assaulted the victim with a deadly weapon in a manner endangering life and resulting in death.

"When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review," Cavazos, 565 U.S. at 7, the Court finds that the state court's decision denying Petitioner's sufficiency of evidence claim with respect to malice was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his third claim, and it should be denied.

///

///

## VI.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Petitioner's request for a <u>Rhines</u> stay be DENIED;
2. Petitioner be allowed to proceed with the exhausted claims in his petition; and
3. The petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 18, 2017**

UNITED STATES MAGISTRATE JUDGE

13